UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Earl Gene Grant, | |
| *Plaintiff*, | Civil No. 3:09cv21 (JBA) |
| *v.* | |
| Scott Salius, Tony Williams, and Tim Goodhall, | November 18, 2011 |
| *Defendants.* | |

RULING ON PLAINTIFF'S MOTION FOR SANCTIONS
DUE TO SPOLIATION OF RECORDING

Plaintiff Earl Gene Grant moves [Doc. # 66] the Court for sanctions against Defendant corrections officers Captain Scott Salius, Lieutenant Tony Williams, and Officer Tim Goodhall due to the destruction of a video recording of Plaintiff's cell taken at the time of the attack at issue in this case. Plaintiff requests that the Court give an "adverse inference" instruction to the jury that the missing recording in question is adverse to, or inconsistent with, Defendants' position in this case. For the reasons that follow, Plaintiff's motion will be denied, however Plaintiff's counsel will be permitted, at trial, to present evidence regarding Defendants' knowledge about the existence of the recording system, the timing of their knowledge of Plaintiff's complaints about them, the steps available to them to ensure the preservation of the recording at issue, and the failure to preserve it.

I.     Background

As part of his claims against Defendants, Mr. Grant alleges that on November 7, 2008 his cellmate, Gerry Thompson, at Northern Correction Institution ("Northern") attacked him ("the attack") after he was handcuffed by Officer Goodhall and that Officer Goodhall remained outside the cell and did not assist him as Thompson beat him. Mr. Grant avers that later the same day, he requested that the Connecticut State Police investigate the attack

and the State Police began an investigation.  (Grant Aff., Ex. A to Mot. for Sanctions ¶ 6.)
In connection with his investigation request, Mr. Grant provided the State Police with a
Witness statement, describing the beating by his cellmate in which he stated that his cellmate
beat him for "several minutes" before a corrections officer "popped the door and came in
and separated us."  (Witness Stmt., appended to Defs.' Opp'n [Doc. # 69].)  Mr. Grant also
states that on November 17, 2008 he filed Inmate Administrative Remedy Forms with
Northern officials and described the attack and the role of the Defendants in the attack.  (*Id.*
¶ 7.)  On one Remedy Form, Mr. Grant describes only Captain Salius' failure to move him
or his cellmate to a different cell in the weeks leading up to the attack and does not discuss
his claim that Goodhall failed to assist him during the attack.  (Inmate Administrative
Remedy Form No. 141–09–194, appended to Defs.' Opp'n.)  One another Remedy Form
filed on the same date, however, Mr. Grant states while the attack occurred, Officer Goodhall
"refuse[d] to sign[al] to get the door open to stop the attack," that he and other officers
watched the attack from outside the cell, and asks to "please see camera of the unit[,] it
shows when I was cuffed and the activity of the officers."  (Inmate Administrative Remedy
Form No. 141–09–192, Ex. 1 to Reply [Doc. # 71].)

Mr. Grant requested production of all audio or video recordings of the attack (Pl.'s
1st Set of Reqs. for Produc., Ex. B to Mot. for Sanctions at 2), however Defendants have
produced only "transfer videos" of Mr. Grant and his cellmate to the medical unit after the
attack and not the video recording of the exterior of Mr. Grant's cell recorded by a stationary
camera outside the cell.  (Mot. for Sanctions at 2; Opp'n at 1.)  Non–party Christopher Blais,
a corrections officer at Northern who assists the Attorney General's Office with litigation
matters, states in an affidavit dated October 3, 2011 that he searched for digital video

recordings in Northern's video storage system and did not find any recordings that showed the exterior of Mr. Grant's cell on November 7, 2008. (Blais Aff., Ex. C to Mot. for Sanctions ¶¶ 2–3.) Mr. Blais further states that "digital video recordings of the correctional facility that are made through the institution's stationary camera system are retained for approximately 30 days, and if they are not copied or marked for storage within that time frame, they are recorded over and cannot be retrieved." (*Id.* ¶ 4.)

II.     Discussion

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001)). Plaintiff argues that he has established all three elements here:(1) that "a duty to preserve the recording of the exterior of Plaintiff's cell arose when the Plaintiff filed complaints with the State Police (on November 7, 2008) and the prison authorities (on November 17, 2008); (2) that according to the Blais Affidavit the recording "could not be located because it was taped–over"; and (3) that the recording was relevant "because its contents would have been dispositive of Plaintiff's claim that Goodhall facilitated Thompson's assault of Plaintiff by remaining outside of Plaintiff's cell for the duration of the attack." (Mot. for Sanctions at 4–5.) Defendants oppose Mr. Grant's motion for sanctions on the grounds that he cannot establish "that the pertinent evidence was destroyed or significantly altered by a party to this action,"

3

or that any of the Defendants had control over the recordings or a duty to preserve the recordings. (Opp'n at 3.) Defendants also argue that it is unlikely that Mr. Grant will be able to demonstrate that the recording was relevant to his claims. (*Id.* at 4.)

The rationale behind the adverse inference instruction sanction is aimed at "a party's destruction of evidence which it has reason to believe may be used against it in litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). The Second Circuit has recognized a threefold purpose behind this sanction: "(1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Byrnie*, 243 F.3d at 107. That the first and second of these purposes are aimed at a party that both has the ability to destroy the evidence at issue and is responsible for the destruction, suggests that this sanction is inapplicable to these Defendants as Mr. Grant has not shown that Defendants Salius, Williams, or Goodhall had any control over the recordings, any duty to maintain them, or were in any way involved in the failure to preserve them.

Although the Second Circuit has not addressed this specific situation, where the parties against whom the adverse inference is sought had no duty or role with respect to the maintenance or destruction of the evidence at issue, several district courts, including the Eastern District of New York, have addressed similar scenarios. The plaintiffs in *Field Day v. County of Suffolk*, Civil Action No. 04–2202, 2010 WL 1286622, *2–4 (E.D.N.Y. March 25, 2010), sought spoliation sanctions against the County of Suffolk for alleged acts of spoliation—including the destruction of paper document files, "internal and external e–mail

4

communications, electronic word documents, calendars, and other data"—committed by its employees as well as certain individual defendants whom the plaintiffs sued in their individual capacities.  The Eastern District of New York considered the applicability of the sanctions independently with respect to each individual defendant and held that spoliation sanctions, including an adverse inference instruction, were unwarranted against those individual defendants where plaintiffs could not demonstrate they actually spoliated any evidence.  *Id.* at *6–13.

The District of Massachusetts, in *Hofer v. GAP, Inc.*, 516 F. Supp. 2d 161, 170–71 (D. Mass. 2007), similarly found that "[t]he spoliation doctrine does not apply . . . where the opposing party is not responsible for the loss or destruction of the evidence."  In *Hofer*, the court declined to impose spoliation sanctions against a plaintiff for failure to preserve a sandal at issue in the litigation where that sandal came off the plaintiff's foot in the course of the accident that formed the basis of the litigation and could not be located after the plaintiff was taken to a hospital and then transported to Massachusetts for surgery.  *Id.*  The Western District of Michigan, in *Adkins v. Wolever*, No. 1:03cv797, 2007 WL 628410, *1–2 (W.D. Mich. Feb. 26, 2007), a prisoner Eighth Amendment claim with relevant facts remarkably similar to this case, found that it had "no basis to sanction" the defendant corrections officer where non–party corrections staff failed to preserve video and photographic evidence of the plaintiff inmate's injuries.

In light of the Second Circuit's focus in applying spoliation sanctions on parties with a duty to preserve evidence and a role in the destruction of that evidence, the Court is persuaded by the above cases that spoliation sanctions, particularly an adverse inference instruction, are unwarranted where the party against whom sanctions are sought has not

5

been shown to have had any responsibilities related to the maintenance, preservation, or destruction of the evidence at issue, and the loss of that evidence is instead attributable to non–parties.  Here, Mr. Grant has not shown that Defendants Salius, Williams, or Goodhall had any role with respect to the maintenance or participated in the destruction of the video footage in question.  He therefore is not entitled to spoliation sanctions.

However, although Defendants had no duty to preserve this evidence and will not be subject to an adverse inference instruction, Mr. Grant's counsel will be permitted at trial to offer admissible evidence that the Defendants were aware of the likely existence of the video footage at the time and location of the attack and could have requested that it be preserved after being made aware of Mr. Grant's grievances, but declined to do so.

III.    Conclusion

For the reasons stated above, Plaintiff's motion [Doc. # 66] for sanctions is DENIED.

IT IS SO ORDERED.

                                /s/
                          Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of November, 2011.

6